Davis, J.
The most serious question raised in this case, and the only one which we find it necessary to decide, is whether the indictment charges an offense under the laws of this state. The indictment charges the defendant in error as vice-president and director of The Canton State Bank with abstracting, misapplying and embezzling, on or about December 13, 1904, certain property, to-wit: certificates of the capital stock of said bank of the face value of fifty dollars per share and upon which had been paid thereon thirty dollars per share, which certificates had theretofore been hypothecated by defendant with such bank as security for moneys theretofore received by him, without the authority of any of the other officers and directors of said bank and with the intent to injure and defraud the bank, and that he, with his *54 co-defendant, the cashier of the bank, did defraud and injure the bank.
The question as to the sufficiency of the indictment was urged in the trial court upon demurrer to the indictment, and during the trial upon motions to direct a verdict for the .defendant and requests to charge the jury, and after the trial upon a motion for a new trial. Upon a petition in error in the circuit court it was held that the judgment of conviction was contrary to law, because the indictment fails to charge any offense under the laws of Ohio. Is the judgment of the circuit court correct?
In considering this question it will be necessary to look to the act of the general assembly known as the Free Banking Act, and particularly to Sections 11 and 12, (Revised Statutes, Sections 3821-70 and 3821-71) and Section 30 (Revised Statutes, 3821-85). The last named section is the one under which this indictment was drawn, and it reads as follows: “Every president, director, cashier, teller, clerk, or agent of any banking company, who shall embezzle, abstract, or willfully misapply any of the moneys, funds, or credits of such company, or shall, without authority from the directors, issue or put forth any certificate of deposit, draw any order or bill of exchange, make any acceptance, assign any notes, bonds, drafts, or bills of exchange, mortgage, judgment or decree, or shall make any false entry in any book, report, or statement of the company, with intent in either case to injure or defraud the company, or any other *55 company, body politic or corporate, or any individual person, or to deceive any officer of the company, or any agent appointed to inspect the affairs of any banking company in this state, shall be guilty of an offense, and, upon conviction thereof, shall be confined in the penitentiary, at hard labor, not less than one year, nor more than ten years.”
The defendant in error in his contention that the indictment does not state an offense relies upon the other two sections mentioned above, which are as follows: “The capital stock of every company shall be divided into shares of fifty dollars each, which shall be deemed personal property, and shall only be assignable on the books of the company, in such a manner as its by-laws shall prescribe; each bank shall have a lien upon all stock owned by its debtors, and no stock shall be transferred without the consent of a majority of the directors, while the holder thereof is indebted to the company,” and “no company shall take, as security for any loan or discount, a lien upon any part of its capital stock; but the same security, both in kind and amount, shall be required of shareholders as of persons not shareholders; and no banking company shall be the holder or purchaser of any portion of its capital stock, or of thé capital stock of any other incorporated company, unless such purchase shall be necessary to prevent loss upon a debt previously contracted in good faith, on security which, at the time, was deemed adequate to insure the payment of such debt, independent of any lien upon such stock; and stock so purchased shall in no case be held by the company so pur *56 chasing, for a longer period of time than six months, if the same can be sold for what the stock cost, at par.”
As we advance in the consideration of this matter it is necessary to keep in view the well marked distinction between shares in the capital stock in a corporation and the certificates issued therefor. The shares are the substance. The certificates are the evidence of things not seen. The shares are actual property of the stockholder. The certificates are the mere attestation of the stockholder’s ownership of the shares. The certificates are no more actual property than a man’s deed is his farm. They are no more than an admission on the part of the corporation that the person to whom they were issued has, pro tanto, performed his part of the contract in becoming a stockholder. They are not negotiable; and even a bona fide purchaser of certificates of stock acquires no title as against equities existing against the vendor.
Substantially this view of the relation .of certificates to shares of capital stock was adopted by the court in Ball et al. v. The Towle Mfg. Co., 67 Ohio St., 306. In that case one Ball was the owner of ten shares of the capital stock of the American Exchange National Bank. The manufacturing company, as a creditor of Ball, began proceedings in aid of execution and served process therein on the bank. Subsequently Ball pledged the certificate for his ten shares of stock in the bank to one Crowell to secure an antecedent debt and for an additional loan. Crowell received the certificate in good faith and without any actual knowledge of the equities of the manufacturing *57 company. The court held that, by the notice served on the corporation in proceedings in aid of execution, the manufacturing company acquired a lien on the shares of stock prior to the rights of Crowell by the pledge of the certificate.
The pertinence of these observations will be apparent when we recur to the statutes. Our general statute as to corporations (Revised Statutes, Section 3254) seems to require that certificates may be issued only when the stock is fully paid up. The certificates in question here, however, declare upon their face that only sixty per cent, of the face 'value of the stock represented by them had been paid. Hence, whether they were lawfully issued or not, or whether they had never been issued, the bank had a lien upon the shares owned by its debtors as provided by Section 11 (Rev. Stat., Sec. 3821-70) of the Free Banking Act, cited and quoted above, and, as provided, no stock should be transferred while the holder thereof was indebted to the bank, without the consent of a majority of the directors. And it was further provided therein that shares of stock should only be assignable on the books of the company. Although Section 12 of the Free Banking Act, heretofore quoted, was made the basis of considerable comment in the argument of this case and entered into the opinion of the circuit court, we do not think that it necessarily concerns the contention of the defendant in error, and we therefore dismiss it from our consideration. We may assume for the purposes of this case that, under Section 12, the bank could obtain a lien on the defendant in error’s stock for a loan or dis *58 count; and we may assume that the bank might become the holder or purchaser of these shares of. its capital stock to prevent loss upon a precedent debt, still the position of the state is made no stronger thereby, because that which was abstracted, misapplied or embezzled, was not the shares of the capital stock. That which was taken from the bank’s possession was the certificate or statement that the defendant in error had paid sixty per cent, on the shares.
The mere delivery of those certificates could not be construed as a symbolical surrender of the sixty per cent, already paid on the stock, because by the express provision of Section 11, the shares of capital stock, not the certificates of payment therefor, in whole or in part, “shall be deemed personal property and shall only be assignable on the books of the company.” And further, “each bank shall have a lien upon all stock owned by its debtors, and no stock shall be transferred without the consent of a majority of the directors, while the holder thereof is indebted to the company.” The certificates, therefore, were not personal property belonging to the bank, as charged in the indictment, nor were they assignable unless at the option of the banking company, nor were they in fact assigned or transferred on the books of the company. The bank had the same rights respecting the shares of stock standing in the name of the defendant in error, after it obtained possession of the certificates, and after they were abstracted, as before, no more and no less. So that the abstraction of the certificates did not and could not “defraud or injure” the bank as charged in the *59 indictment. Under all the circumstances of this case, these certificates were no more in law than receipts for money paid on the shares of stock allotted to the defendant in error; and as an officer of the bank, having access to its vaults, he had the same right to make reprisal as if he had found his own umbrella in the vault and had taken it. If any question is made as to the moral right of the accused to take possession of the papers, as of no value to. anybody but himself, and to pledge them to another bank as collateral to a loan, knowing that the Canton State Bank had a lien on the shares, that is a question outside of our jurisdiction.
Another contention is made over this indictment, and we notice it although it does not seem to be important after the conclusions already expressed. The indictment was drawn under Section 30 of the Free Banking Act (Revised Statutes,-Sec. 3821-85) which provided that: “Every president, director, cashier, teller, clerk or agent of any banking company who shall abstract or willfully misapply any of the moneys, funds or credits of such company,” etc. The indictment charges that the defendant in error abstracted personal property of the bank, to-wit: the certificates of stock, etc.
We have already shown that it is not certificates of stock but the actual shares of stock which are declared to be personal property; but it is said that the certificates are included within the descriptive terms “moneys, funds or credits” in Section 30 above. That the certificates are not “moneys” or “credits” seems to be too obvious for argument, United States v. Smith, 152 Fed. Rep., *60 542, but still apparently confounding the shares with the certificates the counsel for the state say: “It is absurd to say that they may not issue to the stockholder some evidence of his holdings, and if it is issued what is there under the law to prevent this evidence (or personal property as it is called in the statute) from being either sold or transferred, subject only to such rights as the bank issuing the same may have against the stockholder for indebtedness to the bank. And if it has been issued or transferred by way of collateral to some other bank, who will say that it would not be funds of the bank which might be abstracted within the meaning of the statute?” This argument begs the whole question, first because it assumes that certificates are the same as shares, and, second, because it assumes, what is not true in this case, that the shares evidenced by the certificates may be assigned or transferred without consent of the banking company, and third, it assumes that these certificates were “transferred” although the statute says that no stock shall be transferred without consent of a majority of the directors, while the holder thereof is indebted to the company. Whether the argument of counsel might not be sound when certificates of a corporation, without such statutory restrictions as are to be reckoned with here, are indorsed or assigned thereon when pledged, we do not decide. But to return to the words of the statute, lexicographers define the word “funds” as meaning permanent investment for income, “stock of convertible wealth,” or perhaps, giving it the broadest meaning that can be given in this connection, it is *61 nearly synonymous with “assets”; but to contend that the mere certificate is an asset when the real thing, of which the certificate is only an evidence of title, is already within the complete control of the creditor company, seems to us to be not only a confusion of reasoning but of the facts also. It follows that since the abstraction of the certificates was neither an abstraction of moneys, credits or funds, the indictment was fatally defective in that respect also.
The judgment of the circuit court is

Affirmed.

Spear, C. J., Shauck, Johnson and Donahue, JJ., concur.